IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOVAJO J. WRIGHT, | : | CIVIL ACTION NO. **1:CV-07-1536** |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Novajo J. Wright, is seeking review of the decision of the Commissioner of Social Security, ("Commissioner"), that denied her claim for Supplemental Security Income, ("SSI"), pursuant to Title XVI of the Social Security Act, ("Act"). 42 U.S.C. §§ 1381-1383f.

**I.      PROCEDURAL HISTORY.**

Plaintiff protectively filed applications for childhood disability benefits and SSI payments on September 8, 2004 alleging disability since September 1, 1994. (R. 14-15, 246-49). Plaintiff alleged disability due to depression, anxiety/panic disorder, sleep disorder, borderline intellectual functioning and low Global Assessment of Functioning, ("GAF"), scores. (R. 14). The state agency denied her claim initially and she filed a timely request for a hearing. (R. 32-36). A hearing was held before an Administrative Law Judge, ("ALJ"), on September 28, 2006. (R. 267-96). At the hearing, Plaintiff, represented by counsel, and a vocational expert, ("VE"), testified. (R. 267-96). Plaintiff was denied benefits pursuant to the ALJ's decision of December 4, 2006. (R. 11-21).

Plaintiff requested review of the ALJ's decision. (R. 9-10). The Appeals Council denied her request on June 25, 2007, thereby making the ALJ's decision the final decision of the Commissioner. (R. 5-7). 42 U.S.C. § 405(g).

On August 21, 2007, Plaintiff filed the instant action seeking judicial review of the denial of her application. (Doc. 1). Plaintiff filed a supporting brief on February 28, 2008.

(Doc. 12). Defendant filed an opposing brief on April 1, 2008. (Doc. 13). No reply brief has been filed by Plaintiff. The matter is ripe for disposition.

## II.     STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.    DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in

the sequence, review does not proceed any further.  *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  *See* 20 C.F.R. § 404.1520.

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act.  (R. 14-21).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful work activity since her alleged disability onset date.  (R. 20).  At step two, the ALJ found that Plaintiff's depression and learning disorder were "severe" impairments within the meaning of the Regulations.  (R. 15-16, 20).  At step three, the ALJ found that Plaintiff does not have an impairment, or combination or impairments, severe enough to meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (R. 15-16, 20).

At step four, the ALJ found that Plaintiff has no past relevant work.  (R. 18-20).  At step five, the ALJ found that Plaintiff has the residual functional capacity, ("RFC"), to perform a significant range of work with no physical limitations.  (R. 18, 20).  Thus, the ALJ determined that Plaintiff has not been under a disability, as defined in the Act, at any time through the date of the ALJ's decision.  (R. 21).

**IV.   BACKGROUND.**

Plaintiff was born on March 23, 1986 and was twenty-one (21) years old at the time of the ALJ's decision.  (R. 15, 272).  Therefore, she is considered a "younger person" under the Regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c).  Plaintiff graduated high school in special education classes.  (R. 272).

Plaintiff testified that she suffers from mental impairments, but has no physical impairments.  (R. 276).  Plaintiff's mental problems increased when she broke up with her

3

boyfriend, her father was murdered and her mother was incarcerated. (R. 284-87, 291-92). Plaintiff has trouble sleeping, problems with her appetite, she cries often, suffers from depression, poor concentration, panic attacks and occasional hallucinations. (R. 288-91). During the day, Plaintiff helps care for her younger siblings. (R. 283-84, 287). Plaintiff has no friends and does not go out socially. (R. 287).

Vocational expert, Nadine Henzes, testified based on the *Dictionary of Occupational Titles*. (R. 293-96). The ALJ asked the vocational expert to hypothetically consider an individual with Plaintiff's same age, education and vocational background with the limitations as set forth in Dr. James Williams' November 2004 assessment. (R. 185-86, 294-95). The vocational expert testified that such an individual would be capable of performing work as a parking lot attendant, an assembler and a video monitor. (R. 295).

The ALJ then asked the VE to consider that same hypothetical individual with marked problems in concentration, memory and following detailed instructions, moderate problems interacting with people and co-workers and marked limitations in adjusting to work-related settings or work-related pressures. (R. 295). The VE stated that such an individual would not be able to perform any work in the regional or national economy. (R. 295).

### B. Medical Background.

Plaintiff began treating with her primary care physician, Esther M. VanDyke, M.D., in 2000. (R. 168-69).

Plaintiff began treating at Northern Tier Counseling, ("NTC"), in 2004 and treated with counselor, Nicole P. Peutl. (R. 172-79, 219-28, 229-30, 238-45). In January 2004, Plaintiff was diagnosed with depressive disorder, NOS, bereavement, major depression and a GAF score of 40 was assessed.[1] (R. 174). On August 9, 2004, Plaintiff was discharged

---

[1] A GAF score between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."

4

from NTC for refusing treatment/withdrawing. (R. 172).

Plaintiff also treated with Dr. Michael Lavin at Northern Tier Counseling. (R. 219-30, 241-43). In July 2006, Dr. Lavin diagnosed major depression, panic attacks, history of a learning disability, and assessed a GAF score of 48.[2] (R. 219, 241).

Plaintiff underwent a consultative psychological examination with James E. Williams, Ph.D., on November 22, 2004. (R. 180-86). Upon mental status examination, Dr. Williams noted that Plaintiff had an appropriate general appearance, posture, bearing and hygiene, she maintained appropriate eye contact, she was relaxed, there were no overt indications of anxiety, she had appropriate levels of behavior and psychomotor activities, appropriate manners, she was cooperative, had an appropriate attitude towards the evaluation, her speech was appropriate, she was spontaneous and self-disclosive, had appropriate moods, feelings and affect, emotional responses and expression were appropriate, stream of thought and level of productivity were appropriate, she had an appropriate level of continuity, no significant language impairments, she could communicate appropriately and was not preoccupied. (R. 181). Dr. Williams also noted that Plaintiff has worries and concerns, she was not suicidal and had no delusions. (R. 181).

Dr. Williams ultimately noted that Plaintiff should be able to manage any financial benefits she receives, however she may require help budgeting money due to her young age. (R. 183). He diagnosed learning disability, NOS. (R. 183).

Dr. Williams found that Plaintiff had slight limitation in the ability to understand and remember short, simple instructions. (R. 185). He found that Plaintiff had moderate limitations in the ability to carry out short, simple instructions and make judgments on

---

*Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR").

[2] A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34.

simple, work-related decisions.  (R. 185).  Plaintiff had marked limitations in the ability to understand, remember and carry out detailed instructions.  (R. 185).  Dr. Williams also found that Plaintiff's ability to respond appropriately to supervision or co-workers and work pressures in a work setting were not affected by her impairments.  (R. 185).

John Grutkowski, Ph.D., a Disability Determination Services, ("DDS"), physician completed a Psychiatric Review Technique Form on December 27, 2004.  (R. 187-200).  Dr. Grutkowski evaluated Plaintiff's impairments pursuant to Listing 12.05 (Mental Retardation) and found that she suffers from borderline intellectual functioning, however he also found that Plaintiff's impairments were not severe.  (R. 187, 191).  Pursuant to the "B" criteria of Listing 12.05, Dr. Grutkowski found that Plaintiff had mild restriction of activities of daily living, mild difficulties maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation.  (R. 197).  Dr. Grutkowski then found that Plaintiff failed to meet the "C" criteria of Listing 12.05.  (R. 198).

Attached to her brief, Plaintiff submitted a report from Lynnette G. Ruch, Ph.D. (Doc. 12-2).  On December 23, 2007, Plaintiff underwent a psychological disability evaluation with Dr. Ruch.  Dr. Ruch diagnosed intermittent explosive disorder, dysthymic disorder, reading disorder, mathematics disorder, disorder of written expression, anxiety disorder, borderline intellectual functioning, breathing problems, psychosocial stressors and assessed a GAF score of 45.  (Doc. 12-2 at 6).[3]

---

[3] We note that, to admit newly submitted evidence, it "must first be 'new' and not merely cumulative of what is already in the record." *Szubak v. Sec'y of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984).  It must also be material, meaning that it is "relevant and probative" and there is a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Id.*  "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.*  Additionally, when evidence is presented for the first time to the district court, the claimant must demonstrate "good cause for not having incorporated the new evidence into the administrative record." *Szubak*, 745 F.2d at 833; *see also Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

**V.     DISCUSSION.**

***A. Whether the ALJ erred by failing to give special significance to the treating source opinions.***

Plaintiff's first argument is that the ALJ improperly substituted his opinion for that of treating sources, Dr. VanDyke and Dr. Lavin. (Doc. 12 at 15-18). Defendant states that neither Dr. Lavin nor Dr. VanDyke ever found that Plaintiff was disabled and that their opinions support the ALJ's finding that Plaintiff was not disabled. (Doc. 13 at 15).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

---

Plaintiff has failed to raise any of these arguments. Plaintiff attached Dr. Ruch's evaluation to her appeal brief stated that she underwent this evaluation in connection with a new pending claim. (Doc. 12 at 13). The consider evidence that was not available to the ALJ, such as Dr. Ruch's report. *See Matthews*, 239 F.3d at 592-94.

Plaintiff treated with Dr. VanDyke in November 2001 for depression. (R. 167). Dr. VanDyke noted that Plaintiff presented with questionable depression after crying spells in school and at home. (R. 167). Plaintiff was unable to completely express herself. She reported good energy level, she was sleeping ok, eating ok, she reported no fighting at home or at school, her grades were better, she was getting along with her boyfriend and she denied any real stress. (R. 167). Plaintiff stated that she was previously depressed, but was doing better, and she reported that her depression "comes and goes." (R. 167). Plaintiff agreed to talk with a counselor at school and Dr. VanDyke prescribed medication. (R. 167). Dr. VanDyke noted that Plaintiff exhibited no signs of hurting herself or others. (R. 167).

On November 5, 2002, Plaintiff reported to Dr. VanDyke that she had fatigue and thoughts of hurting herself, but she denied any true plan. (R. 165). Plaintiff was doing well in school and she was sleeping good. Dr. VanDyke noted that Plaintiff suffered from depression which may cause her fatigue. Dr. VanDyke prescribed medications and recommended a follow-up visit. (R. 165).

On August 15, 2003, Dr. VanDyke again noted that Plaintiff suffered from depression. She prescribed medication and recommended counseling. (R. 164).

On August 4, 2004, Plaintiff reported to Dr. VanDyke that she was doing well and was stable regarding her depression. (R. 161). She stated that she gets depressed frequently, but she attends counseling to help with her depression. (R. 161).

On October 14, 2004, Plaintiff informed Dr. VanDyke that she became the guardian of her three siblings because her father was murdered and her mother was in jail on drug-related charges. (R. 208). She stated that she was depressed, experienced mood swings and cried frequently. (R. 208). Plaintiff slept poorly and ate ok. (R. 208). She denied suicidal ideation and reported that counseling was successful in the past. (R. 208). Dr. VanDyke prescribed medication, and recommended that Plaintiff begin exercising daily and return for a follow-up visit. (R. 208).

Plaintiff returned to see Dr. VanDyke on November 17, 2004. (R. 206-07). Plaintiff reported that her mood was "much better," she was experiencing some small mood swings,

but overall she was crying less and sleeping better. (R. 207).

In January 2005, Dr. VanDyke noted that Plaintiff was taking Prozac, feeling better, sleeping well, doing well in school, was no longer crying, had no suicidal ideation and no side effects. (R. 205). Plaintiff expressed concern about gaining fifteen pounds over a 2½ month period. (R. 205-06). Dr. VanDyke again recommended that Plaintiff exercise. (R. 205).

In August 2005, Plaintiff's depression was "well controlled" with medication. (R. 203).

Plaintiff underwent a Psychiatric Evaluation with Dr. Lavin on July 11, 2006. (R. 219-23). Dr. Lavin diagnosed major depression, panic attacks, history of a learning disability and assessed a GAF score of 48. (R. 219). Upon mental status examination, Plaintiff's appearance was neat, her hygiene was fair, motor movements were normal, she was cooperative, her speech was appropriate, associative progresses were intact, her mood was depressed, affect was restricted and she had no hallucinations, delusions, or suicidal or homicidal thoughts. (R. 221). Plaintiff was oriented to all spheres, her recent and remote memories were unimpaired, insight and judgment were fair, she had average intelligence, impulse control was present and motivation was fair. (R. 221).

Plaintiff returned to see Dr. Lavin on July 27, 2006 and reported that she was doing better and enjoyed treating with her counselor. (R. 229). She stated that she slept well with medication but she still cried when thinking about her father's death. (R. 229). Plaintiff had no suicidal or homicidal ideation. Dr. Lavin noted that Plaintiff's progress in relation to her goals was stable. (R. 229).

The ALJ evaluated the opinions of Dr. VanDyke and Dr. Lavin. (R. 16-19). Specifically, the ALJ noted that Plaintiff presented to Dr. VanDyke in November 2001 with complaints of depression. (R. 16). However, Plaintiff did not return to see Dr. VanDyke until November 2002. (R. 16). Plaintiff returned to see Dr. VanDyke in August 2003 with complaints of depression since her father's death. (R. 16). On her next visit with Dr. VanDyke in August 2004, Plaintiff reported that she was doing well with her depression and

was able to control it with counseling.  (R. 16).

In October 2004, Plaintiff continued to complain of depression and she admitted that counseling helped her in the past.  (R. 17).  In November 2004 and January 2005, Plaintiff reported that her mood was better, and she had improved sleep and concentration.  (R. 17).  In July 2005, Plaintiff had no complaints of depression and in August 2005, Plaintiff reported that her depression was controlled with medication.  (R. 17).  The ALJ noted that Plaintiff's depression responded well to treatment and that she rarely treated with Dr. VanDyke between 2004 and 2006.  (R. 17-18).  The ALJ stated that Dr. VanDyke's treatment notes support the notion that Plaintiff's condition improved with treatment and medication.  (R. 18).

Regarding Plaintiff's treatment at Northern Tier Counseling, the ALJ noted that Plaintiff only treated at NTC twice in 2004 and did not return for treatment until 2006.  (R. 18).  In January 2004, Plaintiff complained of tearfulness, anergia, anhedonia, nausea, headaches, anger, unresolved grief and physical abuse towards her mother.  (R. 16, 174, 176).  Plaintiff returned to NTC in June 2004 and was discharged in August 2004 for refusing/withdrawing from treatment.  (R. 17, 172).  Plaintiff returned to NTC in June 2006.  By July 27, 2006, Plaintiff was doing better and enjoyed treating with her counselor.  (R. 229).  She stated that she slept well with medication but she still cried when thinking about her father's death.  (R. 229).  Plaintiff had no suicidal or homicidal ideation and her progress in relation to her goals was stable.  (R. 229).

Based upon the foregoing, substantial evidence supports the ALJ's evaluation of the opinions of Dr. VanDyke and Dr. Lavin.

### B. Whether the ALJ erred by failing to include all of Plaintiff's impairments in the hypothetical questions.

Plaintiff next argues that the ALJ's hypothetical questions failed to include Plaintiff's major depression, anxiety/panic disorder, sleep disorder, GAF scores of 40 and 45[4] and

---

[4] We note that the GAF score of 45 appears in Dr. Ruch's December 2007 assessment.  As noted above, note 3, the court will not review Dr. Ruch's report as it was not

medication side effects. (Doc. 12 at 19).

A hypothetical question must include all of a claimant's impairments which are supported by the record; one which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim. *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). However, "[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).

The ALJ found that Plaintiff suffers from the severe impairments of depression and a learning disability. (R. 15-16, 20). However, the ALJ also found that these impairments did not meet or equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (R. 15-16, 20).

The ALJ based his hypothetical questions on Plaintiff's limitations as supported by the record. As stated, the ALJ asked the VE to hypothetically consider an individual with Plaintiff's same age, education and vocational background with the limitations as set forth in Dr. Williams' November 2004 assessment. (R. 185-86, 294-95). In his assessment, Dr. Williams found that Plaintiff had a slight limitation in the ability to understand and remember short, simple instructions, moderate limitations in the ability to carry out short, simple instructions and make judgments on simple, work-related decisions, and marked limitations in the ability to understand, remember and carry out detailed instructions. (R. 185). Dr. Williams also found that Plaintiff's ability to respond appropriately to supervision or co-workers and work pressures in a work setting were not affected by her impairments. (R. 185). The vocational expert stated that such an individual would be able to perform work as a parking lot attendant, with 200 jobs available in the regional economy, an assembler, with 600 jobs available in the region and a video monitor, with 200 jobs available in the region. (R. 295).

---

available to the ALJ. *See Matthews*, 239 F.3d at 592-94.

The ALJ then asked the VE to consider that same hypothetical individual with marked problems in concentration, memory and following detailed instructions, moderate problems interacting with people and co-workers and marked limitations in adjusting to work-related settings or work-related pressures.  (R. 295).  The VE stated that such an individual would not be able to perform any work in the regional or national economy.  (R. 295).

The ALJ did not err in posing his hypothetical questions and his questions included Plaintiff's limitations as supported by the record.  *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  When an ALJ's hypothetical question to a vocational expert sets forth the Plaintiff's limitations, as supported by the record, the vocational expert's response may be accepted as substantial evidence in support of the ALJ's determination that the Plaintiff is not disabled.  *Id*.  Therefore, the vocational expert's response to the question, identifying jobs Plaintiff could perform, constitutes substantial evidence in support of the ALJ's determination that the Plaintiff was not disabled under the Act.  (R. 14-21).

### C. Whether the ALJ erred by failing to properly address Plaintiff's testimony regarding her usual daily activities.

Plaintiff's last argument is that the ALJ erred by failing to properly address Plaintiff's testimony regarding her usual daily activities.  (Doc. 12 at 20-21).

The ALJ noted that Plaintiff was granted guardianship of her three younger siblings.  (R. 18).  The ALJ stated that a "court would not have given such a great responsibility to a mentally disabled individual."  (R. 18).  Although Plaintiff was the guardian of her siblings, she stated that her grandmother, aunt and cousin also helped take care of her siblings.  (Doc. 12 at 21) (R. 291-92).  At the time of the ALJ hearing, Plaintiff she suffered from severe social phobias and was living with her mother.  (Doc. 12 at 21) (R. 291-92).

Plaintiff testified that she has trouble sleeping, problems with her appetite, she cries often, suffers from depression, poor concentration, panic attacks and occasional hallucinations.  (R. 288-91).  During the day, Plaintiff helps care for her three younger siblings.  (R. 283-84, 287).  Plaintiff has no friends, does not go out socially and her only hobby is walking.  (R. 287-88).

On her September 20, 2004 disability questionnaire, Plaintiff reported that she did not require help caring for her personal needs, she cleaned the home, did minimal cooking, drove a car, had trouble getting along with others but did not have problems with authority figures or getting along with supervisors or co-workers.  (R. 83-87).  Plaintiff reported that she was responsible for taking care of her siblings.  (R. 84).  She had no trouble being out in public, she did not belong to any groups, she was never in any fights and she had no hobbies or interests.  (R. 85).  Plaintiff indicated that she was able to complete projects and activities, though she had trouble finishing cleaning, and she had trouble understanding and carrying out instructions.  (R. 85).

Plaintiff also argues that the ALJ's credibility determinations are not supported by substantial evidence.  (Doc. 12 at 21).  The ALJ found that Plaintiff was not entirely credible.  (R. 18).  The ALJ noted that Plaintiff did not consistently seek treatment and her treatment history does not establish disability.  (R. 18).  Additionally, the ALJ noted that Plaintiff's academic records reveal that she was able to pass her classes and earn a high school diploma.  (R. 18, 157-58).  Plaintiff's school records also reveal that she did not have a severe disability and she is capable of performing simple work.  (R. 18, 152, 156).

The ALJ accounted for Plaintiff's limitations when rendering his RFC determination. The ALJ found that Plaintiff has no physical limitations, she has a slight restriction in understanding and remembering short, simple instructions, her ability to respond appropriately to supervisors, co-workers and work pressures in a work setting are not affected by her disability, she has moderate restrictions in carrying out short simple instructions and in making judgments on simple, work-related decisions, and she has marked restrictions in understanding, remembering and carrying out detailed instructions. (R. 18, 20).

There is substantial evidence in the record to support the ALJ's finding that Plaintiff's subjective complaints were not entirely credible to the extent that they were not totally disabling as defined in the Act and the ALJ did not fail to properly address Plaintiff's testimony regarding her usual daily activities.

**VI.     RECOMMENDATION.**

Based upon the foregoing, it is respectfully recommended that Plaintiff's appeal be **DENIED**.

          <u>s/ Thomas M. Blewitt</u>
          **THOMAS M. BLEWITT**
          **United States Magistrate Judge**

**Dated: June 3, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOVAJO J. WRIGHT, | : | CIVIL ACTION NO. **1:CV-07-1536** |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 3, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                        s/ Thomas M. Blewitt_____
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: June 3, 2008**